1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                              EASTERN DISTRICT OF CALIFORNIA

9

10   FRESNO UNIFIED SCHOOL              CASE NOS.:  1:12-cv-01699-MJS AND
     DISTRICT,                          1:14-cv-00555-MJS
11

12              Plaintiff,              ORDER:

13        v.                           (1) DISMISSING PLAINTIFF/COUNTER
                                        DEFENDANT'S COMPLAINT IN CASE NO.
14   K.U., et al.,                      1:12-cv-01699-MJS (ECF NO. 1);

15              Defendants.             (2) DENYING PLAINTIFF/COUNTER
                                        DEFENDANT'S MOTION FOR SUMMARY
16   _____        JUDGEMENT IN CASE NO. 1:12-cv-01699-
                                        MJS (ECF NO.  141);
17   AND RELATED COUNTER-CLAIMS

18                                      (3) DENYING PLAINTIFF/COUNTER
                                        DEFENDANT'S MOTION TO STAY IN CASE
19                                      NO. 1:14-cv-00555-MJS (ECF. NO. 14);

20                                      (4) GRANTING DEFENDANTS'/COUNTER
                                        CLAIMANTS' MOTION FOR RELEF FROM
21                                      THE DISPOSTIVE MOTION FILING
                                        DEADLINE IN CASE NO. 1:12-cv-01699-MJS
22                                      (ECF NO. 153);

23

24                                      (5) CONSOLIDATING CASE NOS. 1:12-cv-
                                        01699-MJS AND 1:14-cv-00555-MJS;
25
                                        AND
26

27                                      (6) DIRECTING CLERK TO CLOSE CASE
                                        NO. 1:12-cv-01699-MJS
28

These two actions were initiated by the Fresno Unified School District ("FUSD" or the "District") against K.U., a student, by and through her mother and educational rights holder, A.D.U., and A.D.U. individually (jointly at times, "A.D.U."). All parties have consented to Magistrate Judge jurisdiction for all purposes under 28 U.S.C. section 636.

The litigation has generated many disputes and the motions being addressed herein. The facts and circumstances giving rise to this litigation and these motions are first outlined below.

## I.   ORIGIN OF DISPUTE AND LITIGATION

**A.   Overview of the First Administrative Proceeding[1] and the Litigation it Generated**

**1.   K.U.'s Background**

 K.U., born December 20, 1991, is eligible for special education services as a student with an intellectual disability. She resides within the boundaries of Plaintiff Fresno Unified School District. Her mother, A.D.U., is her conservator and holds her educational rights.

Beginning with the 2006-07 school year, K.U. attended classes full time at Duncan Polytechnical High School. She graduated in June 2010, receiving a certificate of attendance in lieu of diploma. Her graduation notwithstanding, K.U. continued to attend Duncan full-time in the 2010-11 school year.

FUSD determined to move K.U. into an adult transition program. Her then most recent psychoeducational assessment had been performed in 2002. ADU objected and challenged the decision to change K.U.'s school.

---

[1] Unless otherwise indicated, the facts and history herein are taken from the Administrative Law Judge's written decision in Office of Administrative Hearings (OAH) Case No. 2012010705, dated August 3, 2012, and except where indicated, are believed not to be in dispute.

### 2.    Disputes about K.U.'s Educational Placement

More specifically, in April 2011, the District sent A.D.U. notice that K.U.'s annual individualized education program ("IEP")[2] team meeting was scheduled for May 23, 2012, and that K.U. would not attend Duncan the following year. The District sought to move K.U., who was then 19 years old, to an adult transition program intended to serve students 18 to 22 years of age, i.e., beyond high school age. A.D.U. objected and demanded that any placement decision be made at the IEP meeting.

On May 17, 2011, the District informed A.D.U. that no further assessment was needed to determine K.U.'s eligibility for continued special education. As the end of the school year approached, the District assigned Susan Kalpakoff, who supervised the adult transition program at Fresno City College, as K.U.'s case manager.

At the District's request, A.D.U. visited one of three available adult transition programs before the IEP meeting. A.D.U. did not consider the program to be appropriate for K.U.   A.D.U. wanted K.U. to remain at Duncan as she had made significant academic progress there. A.D.U. also thought K.U.'s program should emphasize academic skills, rather than the practical skills, such as mobility, time management, and vocational skills,  emphasized in transitional programs. She considered K.U. to be mildly disabled, typical in her social interactions, and better behaved than many non-disabled students.

---

[2] An IEP is a written statement setting forth: a disabled child's levels of achievement and performance; measurable annual academic and functional goals; how future progress is to  be measured; a statement of the special education and services to be provided; an explanation of the extent to which the child will not participate in regular classes with nondisabled children; a statement of individual appropriate accommodations and alternative assessments; and, the projected date for the beginning of services.  20 U.S.C. § 1414(d)(1)(A)(i)(I-VII). Beginning no later than the first IEP to be in effect when the child is 16, the IEP must also include appropriate measurable postsecondary goals relating to training, education, employment, and, where appropriate, independent living skills. 20 U.S.C. § 1414(d)(1)(A)(i)(VIII).

The May 23, 2011 IEP meeting included A.D.U., K.U.'s advocate Sandra Hammond,  a Central Valley Regional Center[3] counselor, an FUSD case manager, two FUSD administrators, one of K.U.'s. teachers at Duncan, a school psychologist, and a school counselor. The District's agenda included two items:  K.U.'s placement for the 2011-12 school year and the "fading"[4] of the one-on-one aide who had assisted K.U. at Duncan.  KU's levels of performance included the results of a 2008 academic ability test (WIAT-II) and undated reports that K.U. was working on upper-first-grade math skills and first-to-second grade reading skills. Teachers reported that K.U. completed art projects with support, did most of what she was asked in Forestry, and identified flowers and performed modified classwork in floral design. Further proposed levels of performance indicated that K.U. had good communication skills, and good fine and gross motor skills. She was friendly, polite, willing to do her work, and able to care for her personal needs while at school and to advocate on her own behalf. However, her frequent absences, headaches, and early departures as a result of seizures or related physical impairment had affected K.U.'s relationships with her peers.

A.D.U. wanted K.U. to focus on academics and socialization, and sought to have her remain at Duncan. After the District offered three adult transition programs for 2011-12, the IEP meeting was adjourned to allow A.D.U. to view those she had not yet visited.

A.D.U. rejected one, the Instructional Media Center program (IMC), which served students with moderate-to-severe intellectual disabilities since she believed

---

[3] The State of California finances the Central Valley Regional Center to advocate for, and provide services to, persons with developmental disabilities.

[4] The Court assumes that "fading" reflects the District's intent gradually to discontinue K.U.'s aide as K.U. transferred into the transition program.

K.U. was only mildly-to-moderately disabled. A.D.U. believed that IMC offered nothing more than simple, functional academics.

A.D.U. also rejected another, the Cesar Chavez program, which served mild-to-moderately disabled students, focused on intensive language arts and math, and provided vocational training. The vocational training program was not designed for intellectually disabled students. A.D.U. was disturbed by the students' behavioral and emotional issues, particularly their cussing in the classrooms. She also spoke to the administrator at Cesar Chavez, who recommended against placing K.U. in the program.

The IEP meeting reconvened on June 10, 2011. Attendees were A.D.U., the Regional Center case manager, two FUSD representatives, a school psychologist, and a counselor. Since the May meeting, the draft I.E.P. had been edited to list K.U.'s school of attendance as the District's adult transition programs rather than Duncan. Personal levels of performance had been edited to reflect that K.U. had made steady progress on her 2010-11 annual goals. Although A.D.U. and her advocate, Ms. Hammond[5] insisted that the I.E.P. specify K.U.'s goals, the District participants refused to do so, protesting that the District had not been permitted to assess K.U., and that assessment was a prerequisite to determining goals.[6]

A.D.U. and the District participants also disagreed on possible placements. The District considered only the three adult transition programs, but A.D.U. wanted K.U. to remain at Duncan for a sixth year. A.D.U. argued that at Duncan, K.U. had made good academic progress, had friends and socialized when she was not suffering from

---

[5] Although the OAH decision does not include Ms. Hammond on its list of attendees of the June 10, 2011 meeting, her opinion is reflected in later fact finding.
[6] The ALJ found that the District had never asked to assess K.U.

seizures and related symptoms, and was mainstreamed. In the adult transition programs, protested A.D.U., K.U. would be placed only with disabled students, would no longer participate in a general education curriculum, and would not progress in academics.

The District offered placement in the IMC program, with goals to be determined after thirty days of participation. A.D.U. refused to consent.

On June 20, 2011, the District sent A.D.U. written notice of its intent to discontinue K.U.'s one-on-one aide since an aide would not be needed in an adult transition program. The notice emphasized that K.U. had graduated from Duncan in June 2010 with 230 high school credits and that, in 2011, at 19 ½ years of age, she was appropriately placed in her least restrictive environment: an adult transition program with age-appropriate peers. On August 12, 2011, Duncan's principal telephoned A.D.U. to advise that K.U. had been "disenrolled" from Duncan. A.D.U. protested that K.U. had been reassigned without a signed IEP, but the District considered placement at IMC to be an offer of a free and appropriate public education.[7]

On September 19, 2011, A.D.U. observed the adult transition program at Fresno City College ("FCC-ATP"). The FCC-ATP program was a collaboration between the District and Fresno City College that offered a menu of classes consisting of (1) intervention classes in reading and writing taught by a District teacher in the morning, (2) afternoon classes by the Fresno County Office of Education for students with IQs lower than 50, (3) college courses at Fresno Community College, and (4) one-on-one tutoring with a District teacher or paraeducator when the student was not in another

---

[7] Under state and federal law, children with disabilities have the right to a free appropriate public education to meet their unique needs. 20 U.S.C. § 1412(a)(1)(A); Cal. Educ. Code § 5600.

class or program.  A.D.U. was troubled that there were only male, and only disabled, students in the classroom.

On September 19, 2011, the District agreed to schedule an IEP meeting to secure K.U.'s placement in an adult transition program. It noted that placement in the Fresno City College program was no longer an option since A.D.U. had not registered K.U. for college coursework by the fall semester deadline.

A.D.U. retained an attorney, Dria Fearn, who, on October 4, 2011, demanded K.U.'s re-enrollment at Duncan and development of goals prior to any transition planning. Although the District scheduled an IEP meeting for October 25, 2011, it refused to re-enroll K.U. at Duncan. Instead, it maintained its offer of placement in FCC-ATP or IMC.

The October 25, 2011, IEP meeting included A.D.U., her attorney, Ms. Fearn, her advocate, Ms. Hammond, the Regional Center case manager, and District representatives including two attorneys and others. The meeting considered all three adult transition programs. A.D.U. reiterated her demand that K.U. be re-enrolled at Duncan. The District team presented a plan for a comprehensive triennial assessment of K.U.'s academic achievement, social and emotional development, adaptive behavior, post-secondary transition, and assistive technology.[8]

The assessment was to take place within six weeks and be followed by an IEP meeting on December 12, 2011 to review the assessment results and develop K.U's goals and objectives. A.D.U. requested that a neutral evaluator be retained to conduct the assessment. The District refused. A.D.U. did not sign the assessment plan.

---

[8] A school district must reevaluate a child with a disability at least once every three years unless the school district and the parent agree that reevaluation is unnecessary.  20 U.S.C. § 1414(a)(2)(B)(ii).

The District team suggested placing K.U. in the intervention classes and one-on-one tutoring in the mornings, with three class periods at Duncan in the afternoon, until the end of the fall semester on December 23, 2011. A.D.U. wanted the dual placement to continue through the end of the 2011-12 school year. She consented to the IEP except for the December end date for the Duncan placement.

K.U. began attending afternoon classes at Duncan on October 26, 2011. From that date until the December 2011 IEP meeting, A.D.U. and the District engaged in ongoing written disputes regarding the assignment of K.U.'s aide, the location at which K.U. ate lunch, K.U.'s inability to participate in extracurricular activities at Duncan, and the District's request to assess K.U. The disputes were not resolved except that K.U. was permitted to participate in extracurricular activities at Duncan.

Attendees at the December 12, 2011 IEP meeting were A.D.U. and her advocate, the Regional Center case manager, District representatives, and an FCC case manager. The District had prepared an agenda that included the concerns A.D.U. had communicated to the District.[9]

It was noted, albeit without being able to specify the reading level at which K.U was reading, that K.U. understood materials at her reading level. K.U. was reported to be working on "touch money" math, demonstrating difficulty adding and subtracting money, but not working on math goals of multiplication of multi-digit numbers. Work samples from another of K.U.'s teachers were presented without knowing when they had been completed. A representative from Duncan reported that K.U. was happy in class and completed all of her modified work, but had limited interaction with her fellow

---

[9] The ALJ accepted as evidence an audio recording of this meeting.

students, who were new to her.

A.D.U. again refused to sign the assessment plan unless the District provided a neutral evaluator. She was advised that K.U. could not continue to attend FCC-ATP half- time. Registration for the FCC-ATP program ended January 6, 2012, and would be required for attendance there. If A.D.U. failed to timely register K.U. for FCC-ATP, the only available programs would be IMC or Cesar Chavez. A.D.U. protested that the District ran the morning program and that K.U. did not need to register to attend only the District program. The District responded that the FCC-ATP program was a full-day program and that K.U. needed to be placed in an adult program. A.D.U. insisted on the dual placement. The District remained adamant that K.U. would not be permitted to continue at both FCC-ATP and Duncan. It also refused to consider a request for a comparison of services and mainstreaming opportunities at Duncan and FCC-ATP.

The District did not permit K.U. to attend Duncan after December 23, 2011.

### 3.    Administrative Hearing Number One

On January 24, 2012, A.D.U. and K.U., by A.D.U., filed a Request for Mediation and Due Process Hearing against the District with the State of California Office of Administrative Hearings. On February 1, 2012, the OAH issued an order directing the District to continue K.U.'s dual placement at FCC-ATP and Duncan.

A.D.U's hearing request raised two grounds on which she felt that K.U. had been procedurally denied a free and appropriate public education:  1)  the District had predetermined its offer of a full-time placement at FCC-ATP without considering placement at Duncan or dual placement at FCC and Duncan; and, 2)  the District

denied A.D.U.'s right to actively participate in the IEP process by failing to provide A.D.U. with necessary information and by refusing to consider A.D.U.'s input regarding K.U.'s placement, academic and social progress, and goals and objectives.

The District countered that K.U. was barred from challenging the offer of placement in the FCC-ATP program since A.D.U.'s refusal to consent to the assessment plan left the District without necessary information. It contended that A.D.U., not the District, had presented a pre-determined placement. Finally, it maintained that A.D.U. had actively participated in the IEP process.

A hearing was held over a period of approximately five days in April 2012. The hearing was presided over by Administrative Law Judge (ALJ) Gary Geren. However, Judge Geren subsequently became unavailable, and the case was assigned to ALJ Alexa J. Hohensee who listened to recordings of the hearings, reviewed the evidence and issued a decision on August 3, 2012. After noting that K.U., as the petitioning party, bore the burden of persuasion on all issues, Judge Hohensee effectively concluded she had carried that burden quite well. Specifically, she concluded that the District had predetermined K.U.'s placement prior to the December 12, 2011 IEP meeting, a procedural violation that significantly impeded A.D.U.'s opportunity to participate in the IEP process. She emphasized that the District had erred in considering K.U.'s placement before it had conducted K.U.'s required triennial assessment and determined her goals and objectives. She found that the District impermissibly refused to consider A.D.U.'s input regarding goals and objectives, K.U.'s academic and social progress and A.D.U.'s opinion about placement.

Significantly, ALJ Hohensee rejected the District's argument that A.D.U.'s refusal

to consent to the triennial assessment excused the District's procedural violation, emphasizing that the District was required to conduct an assessment even if A.D.U. refused to consent. Finally, the ALJ faulted the District for failing to provide A.D.U. with information necessary for her to meaningfully participate in the IEP meetings.

The ALJ did not substantively analyze the propriety of K.U.'s continuing joint placement at Duncan and FCC, but concluded that the procedural violations acted to deny K.U. a free and appropriate public education as a matter of law.

In crafting a remedy, the ALJ emphasized that the District's failure to assess K.U.'s academic levels and academic performance as required by law left K.U. at risk of being placed in an inappropriate program for the 2012-13 school year. She ordered the District to secure, within sixty days, an independent educational evaluation, at the District's expense, to determine K.U.'s abilities and educational needs. She also ordered the District to ensure that the independent assessor attended the IEP meeting to fully explain the results of the assessment. She directed the District to ensure that all of K.U.'s teachers attended the IEP meeting and there provided meaningful and accurate information regarding K.U.'s academic achievement and functional performance.

The ALJ acknowledged that compensatory education was an available equitable remedy when a student was denied a free and appropriate public education, but explained that the absence of a recent educational assessment left her unable to determine whether compensatory education was an appropriate remedy.

### 4.      Post-Hearing Number One Developments

### a. Disputes Over Effectuating the ALJ's Orders

On August 10, 1012, the District sent A.D.U. notice that it had selected Paul C. Lebby, Ph.D., to perform an independent educational assessment in accordance with the ALJ's order. The notice included a copy of Dr. Lebby's *vita,* the proposed dates, times and locations for Dr. Lebby's classroom observation and assessment, and proposed dates, times, and locations for an IEP meeting to discuss the results of Dr. Lebby's assessment. Since the ALJ's order mandated that the independent assessment address the areas outlined in the October 25, 2011, assessment plan, the notice also included a copy of it.

On August 20, 2012, A.D.U. advised the District that K.U. would not be available for assessment, and that A.D.U. would not be available for the IEP meeting, on any of the proposed dates. She suggested alternative dates falling on or just before the end of the sixty-day assessment period. She also proposed a location other than that suggested by the District. A.D.U. accused the District of violating the ALJ's order by proposing that the evaluation be conducted by a District employee, and by enclosing with the notice a copy of the October 25, 2011 assessment plan and consent for assessment.

The District explained that it had enclosed the October 25, 2011, assessment plan because the ALJ had ordered the District to follow that plan. It enclosed the IEE Criteria Sheet to document that Dr. Lebby was an authorized independent evaluator and not a District employee. Explaining that the extensive time required to conduct an educational evaluation meant that observation and assessment needed to begin

immediately, the District provided alternative dates for Dr. Lebby's observation and assessment. Finally, the District advised A.D.U. that it had forwarded her requested dates for the IEP meeting to K.U.'s case administrator to coordinate with all the necessary attendees.

On August 24, 2012, A.D.U. demanded an independent evaluator other than Dr. Lebby. On August 28, 2012, the District denied her request, emphasizing the time constraints for conducting the assessment. The District pointed out that the ALJ's order directed the District to select and retain an independent administrator. A.D.U. did not respond.

On August 28, 2012, the District received from the California Department of Education a Notice of Corrective Action, dated August 21, 2012, requiring the District to provide proof of its compliance with the ALJ's order by November 1, 2012.

In the 2012-13 school year, K.U. attended only the ROP program at Duncan. Neither A.D.U. nor K.U. participated in any portion of the FCC-ATP program.

**b. K.U.'s New Administrative Case**

On October 3, 2012, A.D.U. filed a new special education due process complaint (in Case No. 2012100242) alleging that the District had denied K.U. a free appropriate public education. The complaint set forth multiple bases for her claim. Relief requested included: (1) declaratory relief that K.U. had been denied a free appropriate public education for the school years 2010-11 through 2012-13; (2) compensatory education through individual tutoring in written expression, reading, mathematics, and transition services; (3) permission for K.U. to socialize with her nondisabled peers, including during lunch and extracurricular activities at Duncan; (4) reimbursement of

transportation costs; and (5) for the 2012-13 school year, (a) placement in a community college program with classroom access to disabled and nondisabled peers; (b) one-to-one tutoring; (c) an adequate transition program including vocational training; and (d) mobility training.

### c.  The District's New Administrative Case

On October 5, 3012, the District also requested a new due process hearing (in Case No. 2012100291)[10] alleging K.U. was no longer deriving benefit from the Duncan program she had attended since 2006 and from which she graduated in June 2010. Since K.U.'s last assessment was in 2002, and since A.D.U. had withheld consent for the required triennial assessments, the District sought a Declaration that it could assess K.U. without A.D.U.'s consent. It requested a declaration permitting it to discontinue providing instruction to K.U. at Duncan and finding its placement offers in the October 2011 IEP and September 2012 written notice to constitute offers of a free appropriate public education. Finally, it sought sanctions against A.D.U. for her failure to make K.U. reasonably available for assessment in compliance with the ALJ's order.

### d.  The District Initiates this Litigation

On October 15, 2012, shortly after the end of the sixty-day period of time it had been given in which to re-assess K.U., the District filed its complaint in this Court, Case No. 1:12-cv-1699, alleging that A.D.U. had knowingly and willfully failed to comply with her obligations to make K.U. reasonably available for assessment by an independent assessor as ordered by the ALJ. The District sought a finding by the Court that it had

---

[10] On October 30, 2012, ALJ Darrell Lepkowsky consolidated the two new due process cases, Case Nos. 2012100242 and 2012100291.

made reasonable efforts to comply with the ALJ's order and A.D.U. had not. Further, the District requested an order that A.D.U.'s bad faith and willful disobedience of the ALJ's order barred her from asserting claims against the District for failure to provide K.U. with a free and appropriate public education. The District also requested an order that it was deemed to have complied with the ALJ's order for purposes of the California Department of Education's Notice of Corrective Action.

A.D.U. answered the district court complaint on November 1, 2012, counterclaiming that the ALJ had erred in giving the District sole authority to select an independent assessor and requesting a trial *de novo*.

## B.    The Second Administrative Hearing and Its Progeny

As noted above (in sections I. A. 4. b. and c. of this Order), both sides, K.U. and the District, initiated new administrative cases in October, 2012, essentially challenging the other's action, or inaction, in response to ALJ Hohensee's decision and the parties' respective obligations under the law. The two cases were consolidated. A hearing was scheduled for November 19, 2012, but, due to a variety of circumstances, some discussed below, no hearing was convened until September 11, 2013. Then, presided over by ALJ Margaret Broussard, it continued over some 14 days and resulted in the first part of a bifurcated decision on January 23, 2014. That decision, like the previous, was quite favorable to K.U. and unfavorable to the District. It found that the District had denied K.U. a free and appropriate education during the period from October 2010 through the date of the decision, and that the District was not absolved of its responsibility for doing so because of A.D.U.'s refusal to submit K.U. to assessment by the District's chosen provider. Judge Broussard observed, among other things, as follows: The District's claim that it would violate ALJ Hohensee's Order by working

together with A.D.U. and agreeing on an alternate assessor "flies in the face of logic and is not reasonable"; nothing in Judge Hohensee's Order prevented the parties from working together and agreeing on a mutually acceptable assessor; even unreasonable behavior by  A.D.U. in failing to comply with the assessment order would not excuse the District of its obligation to serve K.U.; and "School districts 'cannot excuse their failure to satisfy the IDEA's procedural requirements by blaming Parents.'" (Citations omitted.)

ALJ Broussard found that K.U. had prevailed on all but one issue she decided, but she deferred deciding the issue of appropriate remedies for K.U. because the absence of a full assessment of K.U. at any time during the preceding eleven years left her with insufficient information upon which to fashion an appropriate remedy. She ordered K.U. to participate in a psychoeducational and a transition assessment, both at public expense and conducted by a designated individual or entity, each of whom were to issue written reports with service recommendations and participate in the hearing on remedies. She ordered that K.U.'s failure without good cause to participate in and complete the assessments would constitute a forfeiture of any remedies for compensatory education for a denial of a free and appropriate public education.

The hearing on appropriate remedies was scheduled for July 17 and 18, 2014. To the Court's knowledge, no decision has yet issued on the matters addressed at that hearing.

The District challenges Judge Broussard's January 23, 2014, decision and, specifically, her ruling on the merits, her authority to interpret and modify Judge Hohensee's decision, her ability to excuse A.D.U. from complying with that decision, and her right to convene the remedies portion of the bifurcated hearing. Accordingly,

and noting that Judge Broussard characterized her January 2014 decision as final and binding on the issues decided, the District initiated Case No.1:14-cv-555 in this court within the 90 day period provided in California Education Code section 56505. \

## II.   THE PENDING ACTIONS AND THEIR ISSUES

### A.   Case No. 12-1699

#### 1.   Troubled History

The instant action has been pending for what one might consider an inappropriately long period of time, and it has generated what one might consider an inappropriate excess of litigation activity. Though not necessarily relevant to the substantive issues presently before the Court, review of that history may give context to these disputes and impact actions taken, or not taken, hereafter. It thus will be summarized as follows.

The District filed Case No. 12-1699 on October 15, 2012. Its primary objective was, in effect, to have the Court determine that A.D.U.'s failure to make K.U. available for assessment as ordered by ALJ Hohensee excused the District from the obligations imposed upon it by the ALJ's Order.

Early in the litigation of Case No. 12-1699 the parties agreed to undertake to negotiate toward resolution of their disputes. The Honorable Barbara A. McAuliffe, U.S. Magistrate Judge, convened two days of settlement negotiations in January and February 2013. Reportedly, agreement was reached on all issues. However, once the proposed agreement was reduced to writing, A.D.U., acting on behalf of herself and as guardian for K.U., refused to accept the terms. That refusal continued after initial points of concern were addressed and seemingly corrected.

At that time, and apparently in connection therewith, Rick Ruderman, attorney for A.D.U and K.U., moved to withdraw as counsel of record for both on the ground that irreconcilable differences had arisen between attorney and client. (ECF No. 26). (It is deserving of mention that Mr. Ruderman was the second attorney to undertake representation of A.D.U. and K.U. in their dispute with the School District. The hearing record reflects that they previously had been represented by Dria Fearn. As it turned out, Mr. Ruderman was not to be the last attorney to represent them nor the only one to withdraw because of irreconcilable differences.) The Court delayed ruling on the motion to withdraw while A.D.U. undertook prolonged and initially unsuccessful efforts to obtain new counsel, while the Court considered whether the settlement should be approved over A.D.U.'s objection, and while the parties continued to explore the possibility of settlement. (See ECF Nos. 28, 29, 33, 36, 37, 38, 39, 40, 44, 46 and 71.)

On June 17, 2013, the Court granted Attorney Ruderman's motion to withdraw as counsel for A.D.U., but not as to K.U., and set a schedule for briefing of a proposed motion to enforce settlement as to K.U. (ECF No. 46.) New concerns regarding settlement arose and continued negotiations proved unproductive. (ECF No. 71.) Attorney Ruderman renewed his motion to withdraw as attorney for K.U., and it was granted on August 2, 2013. (ECF Nos. 77 & 79.)

On July 8, 2013, attorney Roger A. Greenbaum entered the case on behalf of A.D.U. and on August 6, 2013, on behalf of K.U. as well. (ECF Nos. 58 & 81.) Scheduling Orders were amended to accommodate new counsel and the protracted proceedings. (ECF No. 87.)

On August 12, 2013, attorney Greenbaum moved to amend the Answer and Counterclaims. (ECF Nos. 85 & 86.) After briefing, the motion to amend was denied on October 28, 2013. (ECF No. 104.)

The stipulated administrative record from the initial OAH hearing was lodged with the Court on September 26, 2013. (ECF No. 100.) The School District later moved to supplement the record to introduce evidence of A.D.U.'s post-administrative hearing noncompliance with the ALJ's Order. (ECF No. 105.) Over objection by K.U., the Court granted the motion to supplement, reserving, however, the question of whether the issues raised by such evidence were properly before the Court. (ECF No. 132.)

Consistent with that reservation, on November 14, 2013, the Court *sue sponte* raised the issue of whether the U.S. District Court was the proper forum for Plaintiff to seek, not review of the ALJ's decision, but enforcement of it. (ECF No. 117.) The parties briefed the issue on November 25, 2013 and the District supplemented its briefing on November 27, 2013. (ECF Nos. 127, 128 & 131.) The Court has not heretofore resolved that issue; it will do so in connection with its ruling on pending motions.

However, on November 6, 2013, A.D.U.'s third attorney, Roger Greenbaum, moved to withdraw as attorney of record for both K.U. and A.D.U. on the grounds that A.D.U. had breached promises to compensate counsel (ECF No. 109) and the later-added grounds of loss of the relationship of trust and confidence necessary to the relationship. (ECF No. 125.) On November 27, 2013, the Court granted attorney Greenbaum's withdrawal motion and, to accommodate A.D.U.'s loss of counsel, continued until January 16, 2014, the deadline for filing dispositve motions. (ECF No. 132.) In doing so, the Court pointedly advised A.D.U. on the record that, given the

accommodations afforded A.D.U. due to her frequent change of counsel and the resulting delay in proceedings, the continuance to January 16, 2014, would be the final one. A.D.U. acknowledged that she understood.

On January 24, 2014, the court was notified of ALJ Broussard's decision, after hearing, on the second, consolidated, administrative claims. (ECF No. 136.) The parties were ordered to file briefs on the effect of that decision on the proceedings pending in this Court. (ECF No. 137.) They did so on February 16 and 18, 2014. (ECF Nos. 146, 147.)

In the interim: on January 31, 2014, the School District filed its now pending motion for summary judgment (ECF No. 141); on February 19, 2014, attorney Tania L. Whiteleather was substituted in as attorney of record for A.D.U. and K.U. (ECF No. 149); the time for opposition to the motion for summary judgment and hearing thereon was extended to accommodate new counsel (ECF Nos. 150, 151); hearing on the motion for summary judgment was continued initially to March 28, 2014 (ECF No. 151); and, ultimately, the motion for summary judgment was deemed submitted on March 25, 2014. (ECF Nos. 156, 157.)

On January 13, 2014, despite having been advised on November 27, 2013, that no further extension of the dispositve motion deadline would be granted, A.D.U. filed a pro se "request for an extension from the court for the filing of dispositive motions." (ECF No. 135.) Ms. Whiteleather filed a formal request for the same relief on March 14, 2014.  (ECF No. 153.) The motion was deemed submitted on April 10, 2014. (ECF No. 164.)

**2.    Motions Pending**

There then are two submitted motions and one necessarily inherent issue awaiting decision by the Court in case 12-1699:

a.    The School District's motion for summary judgment deemed submitted March 25, 2014 (ECF No. 156) on the motion (ECF No. 141), opposition (ECF No. 152) and reply (ECF No. 155) and related papers.

b.    The issue raised by the Court (ECF No. 117) of whether this action for enforcement of ALJ's Hohensee's hearing decision is properly before the Court, briefed by the parties (ECF Nos. 127, 128, 131), necessarily will be resolved prior to resolving the District's motion for summary judgment.

c.    K.U and A.D.U.'s motion for relief from the dispositive motion deadline, deemed submitted April 10, 2014 (ECF No. 164) on the basis of the moving papers (ECF Nos. 153 and, arguably,135), the opposition (ECF No. 162), and the reply (ECF No. 163).

**B.    Case No. 14-555**

**1.    Motion for Stay**

As noted above, the District disagrees with ALJ Broussard's January 23, 2014, decision modifying Judge Hohensee's order and excusing A.D.U.'s non-compliance with that order. To meet the filing deadline triggered by what Judge Broussard characterized as a final decision on those issues, the District initiated Case No. 14-555 on April 18, 2014. (ECF No. 1)

The District then, on May 17, 2014 (ECF No. 14) moved this Court to issue an Order staying the remedies hearing in the ongoing consolidated administrative cases numbered 2012100242 and 2012100291. A.D.U. and K.U, who filed an answer and

counterclaim on May 27, 2014 (ECF No. 17), have filed an opposition to the motion to stay (ECF No. 22) and the District has filed a reply (ECF No. 24). The matter was deemed submitted on June 26, 2014 (ECF No. 26) and now stands ready for decision.

### 2.    Consolidation

On July 2, 2014, the Court *sua sponte* ordered the parties to file a statement of reasons, if any they had, why Case No. 14-555 should not be consolidated with Case No. 12-1699. (ECF No. 26.) A.D.U. opposed consolidation (ECF No. 27), and the District filed a statement of non-opposition, but requested clarification as to whether consolidation would extend A.D.U.'s time for filing dispositive motions in Case No. 12-1699. (ECF No. 28.)

## III.    LEGAL STANDARD

"The IDEA assures that all children with disabilities receive a free appropriate public education." Lake Wash. Sch. Dist. v. Office of Superintendent of Pub. Instruction, 634 F.3d 1065, 1066 (9th Cir. 2011) (quotation marks and citations omitted). "Federal funding is conditioned upon state compliance with the IDEA's extensive substantive and procedural requirements." Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992). States are required to provide "[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such a child." 20 U.S.C.§ 1415(b)(6). If the complaint is not resolved "to the satisfaction of the parents," then "the parents or the local educational agency involved in such a complaint shall have an opportunity for an impartial due process hearing" to resolve issues raised in the complaint. 20 U.S.C. §§ 1415(f)(1)(A), (f)(1)(B)(ii), (f)(3)(B).

Under California law, a due process hearing may be initiated under the following circumstances: (1) "[t]here is a proposal to initiate or change the identification, assessment, or educational placement of the child or the provision of a free appropriate public education to the child"; (2) "[t]here is a refusal to initiate or change the identification, assessment, or educational placement of the child or the provision of a free appropriate public education to the child"; (3) "[t]he parent or guardian refuses to consent to an assessment of the child"; or (4) "[t]here is a disagreement between a parent or guardian and a local educational agency regarding the availability of a program appropriate for the child, including the question of financial responsibility . . . ." Cal. Educ. Code § 56501(a)(1)-(4).

Once the state educational agency has conducted a due process hearing and reached its final decision, an aggrieved party may commence suit in federal court: "Any party aggrieved by the findings and decision made [by the hearing officer] shall have the right to bring a civil action with respect to the complaint . . . ." 20 U.S.C. § 1415(i)(2)(A); see also 20 U.S.C. § 1415(i)(1); Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 526 (2007).

On review of a due process decision, a district court must "receive the records of the administrative proceedings," "hear additional evidence at the request of a party," and "bas[e] its decisions on the preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(C). Thus, review under IDEA differs from review of other administrative decisions, which is generally limited to the record before the administrative body and requires that the administrative determination be affirmed if supported by substantial evidence. See Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995). Under IDEA, the court must give "due weight" to the administrative decision, and may not

"substitute [its] own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982), superseded by statute on other grounds, N.B. v. Hellgate Elementary Sch. Dist., 541 F.3d 1202, 1213 n.3 (9th Cir. 2008). However, the Court has discretion to determine how much deference to give state educational agencies, and is free to accept or reject the agency's findings in part or in whole. Capistrano, 59 F.3d at 891.

## IV.   **DISCUSSION**

### A.    **Jurisdiction over the District's Complaint in Case No. 12-1699**

To determine whether the Court has jurisdiction over the District's complaint, the Court first must determine whether the District is "aggrieved" by ALJ Hohensee's decision within the meaning of IDEA.  20 U.S.C. § 1415(i)(2)(A). The District argues that it is aggrieved because it has expended efforts attempting to comply with the decision, received a Notice of Corrective Action for its failure to comply, and was required to defend itself in the second OAH due process hearing. (ECF No. 127 at 3-4.) A.D.U. argues that the District is not aggrieved because it is seeking enforcement of a provision in the decision that it embraces. (ECF No. 128 at 5.)

The United States Court of Appeals for the Ninth Circuit has not directly addressed the issue of whether a party seeking to enforce an IDEA due process decision is "aggrieved," and the case law from other jurisdictions is divided. Some courts have decisively concluded that a party seeking to enforce an IDEA due process decision is not aggrieved by that decision. E.g., Robinson v. Pinderhughes, 810 F.2d 1270, 1275 (4th Cir. 1987) (concluding that parties who received a favorable decision were not

aggrieved); <u>Metro. Sch. Dist. of Martinsville v. Buskirk</u>, 950 F. Supp. 899, 902 (S.D. Ind. 1997) ("A suit to enforce an administrative decision clearly is not brought by a party aggrieved by that decision."); <u>Moubry ex rel. Moubry v. Indep. Sch. Dist. No. 696(ELY)</u>, 951 F. Supp. 867, 885, 886 n.13 (D. Minn 1996). Some of these courts, as well as others that have avoided addressing the question directly, have chosen to imply a private right of action for parents and students to enforce IDEA decisions under 42 U.S.C. § 1983.[11] <u>E.g.</u>, <u>Robinson</u>, 810 F.2d at 1272-75; <u>Jeremy H. v. Mt. Lebanon Sch. Dist.</u>, 95 F.3d 272, 278 (3d Cir. 1996), <u>called into doubt by</u> <u>A.W. v. Jersey City Pub. Sch.</u>, 486 F.3d 791, 802-803 (3d Cir. 2007) (en banc). Still others have concluded that parents and students may bring an enforcement action directly under IDEA, because holding to the contrary would undercut IDEA's statutory policies. <u>E.g.</u>, <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 115-17 (1st Cir. 2003). More specifically, disallowing an IDEA enforcement action would "render virtually meaningless the guarantee of a free appropriate education" and would create incentives for school systems not to comply. <u>Id.</u> at 116; <u>Dudley v. Lower Merion Sch. Dist.</u>, 768 F. Supp. 2d 779, 783-84 (E.D. Penn. 2011) ("Such a loophole would allow unfortunate delays in the resolution of important and immediate issues concerning a child's remedial education and generally open the door to significant mischief by a School District[.]").

      None of these positions support a conclusion that the Court has jurisdiction over the District's complaint. First, the District's statutory right of action is limited to contesting

---

[11]   The Ninth Circuit has held, in a case involving parents seeking money damages, that "the comprehensive enforcement scheme of the IDEA evidences Congress' intent to preclude a § 1983 claim for the violation of rights under the IDEA." <u>Blanchard v. Morton Sch. Dist.</u>, 509 F.3d 934, 938 (9th Cir. 2007). However, other courts that share this view have opined that this bar on § 1983 relief does not extend to IDEA enforcement actions. <u>Sellers v. Sch. Bd. of City of Manassas</u>, 141 F.3d 524, 532 n.6 (4th Cir. 1998); <u>C.K. v. Tredyffrin/Easttown Sch. Dist.</u>, No. 08-2571, 2010 WL 9583434, at *2 (E.D. Penn. Mar. 30, 2010); <u>L.J. v. Audubon Bd. of Educ.</u>, No. 06-5350 (JBS), 2009 WL 995458 at *3 n.1 (D.N.J. April 13, 2009).  The Ninth Circuit has not directly addressed whether § 1983 actions are available to parents or students seeking to enforce an IDEA administrative order.

findings and decisions, with respect to the complaint presented, by which it is aggrieved. 20 U.S.C. § 1415(i)(2)(A); see Lake Wash. Sch. Dist. v. Office of Superintendent of Pub. Instruction, 634 F.3d 1065, 1068 (9th Cir. 2011) ("In short, § 1415 establishes a private right of action for disabled children and their parents. It creates no private right of action for school boards or other local educational agencies apart from contesting issues raised in the complaint filed by the parents on behalf of their child.). Here, the District is not "aggrieved" by the ALJ's decision within the plain wording of the statute. Although A.D.U. prevailed at the administrative hearing, the District has not appealed ALJ Hohensee's decision nor alleged any error on the part of ALJ. To the contrary, the District seeks enforcement of a provision of the decision which the District finds favorable. Indeed, the District's pleadings reveal that its issues arise not from the ALJ's decision, but from A.D.U.'s conduct subsequent to that decision, i.e., her refusal to allow the District to assess K.U.

Second, § 1983 does not give municipal bodies, such as the District, any rights to bring a cause of action against a private individual. See 42 U.S.C. § 1983. Thus, even if enforcement of IDEA decisions is available to parents and students under § 1983, that right does not extend to the District.

Lastly, the policies that might favor permitting enforcement actions by parents and students are not implicated in enforcement actions brought by school districts. The primary purposes of IDEA include ensuring that children with disabilities have available to them a free appropriate public education, and that the rights of such children and their parents are protected. 20 U.S.C. § 1400(d)(1)(A)-(B). Allowing enforcement actions by parents promotes these policies by ensuring that school districts comply with their statutory obligations. However, IDEA contains no corresponding policies in favor of the

26

school district that would support allowing enforcement actions against parents and children. "[T]he statement of purpose strongly suggests that Congress intended to provide a private right of action only to disabled children and their parents." Lake Wash. Sch. Dist., 634 F.3d at 1068 (quotation marks omitted) (quoting Lawrence Twp. Bd. of Educ. v. New Jersey, 417 F.3d 368, 371 (3d Cir. 2005)).

The District argues that, without a judicial remedy in this Court, it has no means to enforce ALJ Hohensee's decision because the OAH has no jurisdiction to enforce its own orders. (Citing Wyner v. Manhattan Beach Unified Sch. Dist., 223 F.3d 1026, 1029.) Additionally, the California Department of Education is permitted to intervene when a school district fails to comply with a due process decision, but has no enforcement authority when parents or children fail to comply. Cal. Code Regs. tit. 5, § 4650(a).

It is true that the District may have no forum to obtain the specific declaratory relief it seeks in this case. However, the Court cannot imply a right of action where one does not exist simply because a party has no other remedy. See Cort v. Ash, 422 U.S. 66, 78 (1975) (four factors for determining whether a statute provides an implied private right of action). Additionally, the Court notes that a parent's refusal to consent to an assessment is grounds for seeking a due process hearing under California law. Cal. Educ. Code § 56501(a)(3). Thus, the issue of whether the District has a continuing obligation to K.U. in light of A.D.U.'s refusal to consent to the assessment ordered by ALJ Hohensee could be, and ultimately was, adjudicated in the OAH.

Based on the foregoing, the District has not articulated any legitimate legal basis for this Court to exercise subject matter jurisdiction over the instant case. "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the

action." Fed. R. Civ. P. 12(h)(3). Accordingly, the District's complaint must be dismissed. For the same reasons, the Court will deny the District's motion for summary judgment.

### B.    Consolidation of Cases 12-1699 and 14-555

The District does not oppose consolidation of Case Nos. 12-1699 and 14-555, but asks for clarification regarding the effect of consolidation on the dispositive motion deadline. (ECF No. 28.) It is the District's understanding that no more dispositive motions will be permitted regarding issues presented in Case No. 12-1699. (Id.)

A.D.U. opposes consolidation on the ground that the District's complaint in Case No. 12-1699 is ready for adjudication and should be dismissed. (ECF No. 27.) A.D.U. argues that consolidation will further delay K.U.'s access to needed educational services. (ECF No. 27.)

The Court may consolidate actions that involve "a common question of law or fact." Fed. R. Civ. P. 42. Following dismissal of the District's complaint, the only issue remaining in Case No. 12-1699 will be A.D.U.'s counterclaim that ALJ Hohensee erred in giving the District sole authority to select the assessor for K.U.'s evaluation. (ECF No. 9.) This counterclaim shares common questions of law and fact with the District's complaint in Case No. 14-555. (ECF No. 1.) In light of the Court's decision to dismiss the District's complaint in Case No. 12-1699, A.D.U.'s concerns regarding delay are unwarranted.

Accordingly, the Court finds that consolidation is appropriate.

### C.    Motion to Extend the Dispositive Motion Deadline

A.D.U. seeks additional time to file dispositive motions in Case No. 12-1699. (ECF No. 153.) The District opposes the motion on the ground that A.D.U. has not shown excusable neglect. (ECF No. 162.) The majority of the parties' arguments focus on

whether A.D.U. should be permitted to file a motion to dismiss, an issue that is now moot in light of the Court's decision herein to dismiss the District's complaint.

However, the Court will grant additional time to file dispositive motions with respect to A.D.U.'s counterclaim in Case No. 12-1699. Specifically, the Court will extend the time to file dispositive motions on A.D.U.'s counterclaim to the dispositive motion deadline in Case No. 14-555, which will be set at the Initial Scheduling Conference.

### D.   Motion to Stay the OAH Remedies Hearing in Case No. 14-555

The District sought a stay of the OAH remedies hearing on the ground that it had appealed the underlying due process decision on the merits. (ECF No. 14-1 at 1.) A.D.U. argues that the District is not entitled to a stay because it was required to, but did not, follow procedures set out in the California Rules of Court. (ECF No. 22 at 3-4.) Additionally, the District and A.D.U. disagree on the legal standard applicable to requests to stay administrative proceedings, and whether the District has met that standard. (ECF Nos. 14-1 at 6, 22 at 4-12.)

The Court denied the District's motion by minute order on July 15, 2014 (ECF No. 29), and herein sets forth its reasoning.

At the outset, it must be noted that none of the authorities relied on by the District support granting a stay in the circumstances presented here. First, the District cites cases that stand for the proposition that a court has discretionary power to stay proceedings on its own docket. See Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936); CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962); Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005); Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). (ECF No. 14-1 at 5-6.) This proposition, and the legal standard for granting

such a stay, is inapplicable because the District seeks to stay proceedings before a different forum.

Second, the District cites Federal Rule of Civil Procedure 62 (ECF No. 14-1 at 6), which pertains to stays of proceedings to enforce a judgment. Because Case No. 14-555 is in essence an appeal, rather than an enforcement action, Rule 62 is inapplicable.

Next, the district cites 5 U.S.C. § 705 (ECF No. 14-1 at 6), which permits a district court to "postpone the effective date of an agency action or to preserve status or rights pending conclusion of the [judicial] review of proceedings." However, this provision applies only to the action of agencies that are authorities of the Government of the United States, 5 U.S.C. § 701(b)(1), and not to the State of California Office of Administrative Hearings.

The District also cites Federal Rule of Appellate Procedure 18 (ECF No. 14-1 at 6), which permits a court of appeals to stay an order of an administrative agency. While the district court sits in a quasi-appellate posture with respect to an IDEA due process decision, it is not a court of appeals. Thus, Rule 18 does not apply.

Finally, the District argues that it can find no authorities directly on point because its case is unique and presents a matter of first impression. (ECF No. 24 at 2.) However, the District is not the first party to seek to enjoin a state administrative proceeding.

Principles of comity, equity, and federalism require federal courts to abstain from enjoining certain state administrative proceedings that are "judicial in nature." Younger v. Harris, 401 U.S. 37, 43-50 (1971) (abstention principles applicable to state criminal proceedings); Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627 (1986) (extending Younger to certain state administrative proceedings). Abstention is appropriate in favor of a state proceeding if (1) the state proceedings are ongoing, (2)

30

1  the proceedings implicate important state interests, and (3) the state proceedings

2  provide an adequate opportunity to raise federal questions. Fresh Int'l Corp. v. Agric.

3  Labor Relations Bd., 805 F.2d 1353, 1357-58 (9th Cir. 1986) (citations omitted). Here,

4

5  there can be no doubt that the OAH hearing is ongoing and presents an adequate

6  opportunity to raise federal questions concerning IDEA. And, although the OAH hearing

7  will adjudicate issues of federal law, it also will implicate important state interests in

8  education. See Williams v. Red Bank Bd. of Educ., 662 F.2d 1008, 1018 (3d Cir. 1981),

9  (abstaining in deference to teacher tenure termination proceedings because state's

10  interest in education is important), cited with approval by Dayton, 477 U.S. at 627 n.2.

11  Accordingly, this Court must abstain from interfering with the remedies hearing.

12

13         Moreover, even if abstention is not required, the District has not met the standard

14  to stay an administrative proceeding. A request for such a stay is evaluated under the

15  same standards employed in evaluating motions for preliminary injunctive relief. See

16  Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983), rev'd in part on other grounds,

17  463 U.S. 1328 (1983). The party seeking a stay must show "either a probability of

18  success on the merits and the possibility of irreparable injury, or that serious legal

19  questions are raised and the balance of hardships tips sharply in [the movant's] favor."

20

21  Abassi v. INS, 143 F.3d 513, 514 (9th Cir. 1989), overruled on other grounds by Nken v.

22  Holder, 556 U.S. 418, 432 (2009). These factors are considered on a "sliding scale."

23  Stormans, Inc. v. Selecky, 526 F.3d 406, 412 (9th Cir. 2008). "Where the stay applicant

24  demonstrates a strong likelihood of success, the *possibility* of irreparable injury is

25  sufficient to warrant a stay. On the other end of the sliding scale, where the stay

26  applicant demonstrates that the balance of hardships tips sharply in its favor, the

27  applicant must show only that it raises 'serious legal questions.'" Id. (citations omitted). In

28

some cases, the public interest also must be "strongly considered." <u>Lopez</u>, 713 F.2d at 1435.

Here, the District has shown neither a strong likelihood of success on the merits nor the possibility of irreparable injury.[12] Moreover, the balance of hardships tips sharply in favor of K.U., as postponement of the remedies hearing will further delay her educational opportunities. When the Court considers the public interest in ensuring that children with disabilities receive a free appropriate public education, the balance weighs overwhelmingly against the District.

For these reasons, the Court denies the District's motion to stay.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.  The District's complaint (ECF No. 1) in Case No. 1:12-cv-1699-MJS is DISMISSED for lack of jurisdiction;

2.  The District's motion for summary judgment (ECF No. 141) in Case No. 1:12-cv-1699-MJS is DENIED;

3.  The District's motion to stay remedies hearing (ECF No. 14) in Case No. 1:14-cv-555-MJS is DENIED;

4.  K.U. and A.D.U's motion for relief from Order setting filing deadline for dispositive motions (ECF No. 153) in Case No. 1:12-cv-1699-MJS is GRANTED;

5.  Dispositive motions relating to A.D.U.'s cross-complaint in Case No. 1:12-cv-1699-MJS will be due at the same time as dispositive motions in Case No.

---

[12] The District's claim that it will be irreparably injured by expending additional time and money litigating the remedies hearing is, at this stage of the proceedings, unpersuasive.

1:14-cv-555-MJS,  a date to be set at the Initial Scheduling Conference in

1:14-cv-555-MJS;

6.  Case No. 1:12-cv-1699-MJS is CONSOLIDATED with Case No. 1:14-cv-555-MJS;

7.  The Clerks shall administratively CLOSE Case No. 1:12-cv-1699-MJS; and

8.  All future filings shall be in Case No. 1:14-cv-555-MJS.


IT IS SO ORDERED.


Dated:   July 29, 2014           /s/ *Michael J. Seng*
                                 UNITED STATES MAGISTRATE JUDGE